# In the United States Court of Federal Claims

|  |  |
|---|---|
| MICHAEL G. POHL,<br><br>   *Plaintiff,*<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>   *Defendant.* | No. 21-1482C<br>(Filed: June 21, 2022) |

*Sean Timmons*, Houston, TX, for Plaintiff.

*Sonia Williams Murphy*, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for Defendant.  With her on the briefs was Ryan V. Haslam, Of Counsel.

**OPINION AND ORDER**

**LERNER,** *Judge*.

  This is an action for military pay, disability retirement pay, reimbursement of expenses, and other benefits that Plaintiff, Michael G. Pohl, alleges the U.S. Air Force Board for the Correction of Military Records ("AFBCMR") improperly denied given the injuries he suffered while on military duty.  Compl. ¶ 1, ECF No. 1.  The case is before the Court on the Government's Motion to Dismiss pursuant to Rule 12(b)(1) of the U.S. Court of Federal Claims ("RCFC") and the parties' Cross-Motions for Judgment on the Administrative Record.  *See* Def.'s Mot. to Dismiss and Cross Mot. for J. on the Admin. R., ECF No. 11 ("Def.'s Mots."); Pl.'s Mot for J. on the Admin R., ECF No. 8 ("Pl.'s Mot.").  On February 28, 2022, the case was transferred to the undersigned.  Order, ECF No. 14.  The Court held oral argument on the parties' motions on April 20, 2022.  *See* Hr'g Tr., ECF No. 18.  Subsequently, on May 11, 2022, Plaintiff filed a "Motion for Leave to File Supplemental Affidavit from Plaintiff in Support for Plaintiff's Motion for Judgment on the Administrative Record" ("Plaintiff's Motion to Supplement").  Pl.'s Mot. to Suppl., ECF No. 19.

  Plaintiff moves for judgment on the administrative record, arguing that the AFBCMR unlawfully denied him disability retirement pay under 10 U.S.C. § 1204.  *See* Pl.'s Mot.  Specifically, Plaintiff contends that the AFBCMR's actions were arbitrary and capricious when it ruled that (1) Mr. Pohl failed to show error in the Air Force's decision that required a medical retirement; and (2) Plaintiff was not eligible for a Defense Department Form 214, *Certificate of Release or Discharge from Active Duty* ("DD-214") at the time of his retirement or a correction to his narrative reason for separation.  *Id.* at 14–16.  Plaintiff further argues that the AFBCMR's

denial of disability retirement benefits amounted to substantive and procedural due process violations under the Fifth Amendment to the U.S. Constitution. Compl. ¶¶ 34–41. Mr. Pohl seeks various forms of relief, including declaratory and injunctive relief with respect to all claims in his Complaint, as well as back pay, allowances, out-of-pocket medical expenses, other medical benefits to which he claims entitlement under the law, and reasonable attorney's fees. *Id.* at 11.

The Government moves to dismiss Plaintiff's claims for lack of subject matter jurisdiction. *See* Def.'s Mots. at 8–12. It argues that the Court should dismiss the action because the statute of limitations has run on Plaintiff's claims and because the Court does not have jurisdiction over constitutional due process claims. *Id.* at 7–12. Alternatively, the Government moves for judgment on the administrative record. *See id.* at 12.

The Court is sympathetic to Mr. Pohl's situation and recognizes the role that stigmas surrounding disabilities in the military may have played in his case. However, for the reasons set forth below, the Court finds that the statute of limitations has lapsed, and therefore it lacks subject matter jurisdiction over Plaintiff's claims. Accordingly, the Government's Motion to Dismiss is **GRANTED**, and the parties' Cross-Motions for Judgment on the Administrative Record are **DENIED** as moot. Plaintiff's Motion to Supplement is also **DENIED**.

## I.     Background

### A.     Statutory and Regulatory Framework

This case involves the application of several military policies and regulations associated with determining servicemembers' entitlement to disability retirement pay under 10 U.S.C. § 1204. Section 1204 allows members of the armed forces who were on active duty for 30 days or less, or on inactive-duty training, to retire with retired pay if the member "is unfit to perform the duties of his office, grade, rank, or rating because of physical disability." 10 U.S.C. § 1204 (2018). In relevant part, the statute provides that the Secretary of Defense may retire a servicemember with retired pay if the Secretary determines that: (1) the disability is permanent and stable; (2) the disability is the result of an injury "incurred or aggravated in [the] line of duty . . . while performing active duty or inactive-duty training"; (3) "the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence"; and (4) "the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination." § 1204 (1)–(4).

The Integrated Disability Evaluation System ("IDES") is the military's "mechanism for implementing retirement or separation because of physical disability." Department of Defense Directive ("DoD Directive") 1332.18, *Separation or Retirement for Physical Disability*, part 3.1 (Nov. 4, 1996); Def.'s Mots. at 5; Def.'s Mots. at App. 2. It consists of four elements: (1) medical evaluation, including by a medical evaluation board ("MEB"); (2) a physical disability evaluation, including by a physical evaluation board ("PEB") and appellate review; (3) counseling; and (4) final disposition. *See* DoD Directive 1332.18, part 3.2. The standard for determining unfitness due to physical disability is "unfitness to perform the duties of the

member's office, grade, rank or rating because of disease or injury." *Id.* at part 3.3. Servicemembers found to be unfit are allowed an honorable discharge. *See* Air Force Instruction ("AFI") 36-3209, *Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members*, part 3.14 (Aug. 15, 1994); Def.'s Mots. at App. 109. Servicemembers having at least 15 years of experience can also elect to transfer to the Retired Reserve as an alternative to being separated due to a physical disqualification. 10 U.S.C. § 12731a(a) (2022); *see also* AFI 36-3209, part 5.8.2.7; Def.'s Mots. at App. 154.

The Air Force uses line of duty determinations to evaluate eligibility for physical disability retirement or separation. AFI 36-2910, *Line of Duty (Misconduct) Determination*, ¶ 1.1.1.1; Def.'s Mots. at App. 11. A member's commander makes a line of duty determination at the time of injury when (1) the member is unable to perform military duties for more than twenty-four hours; (2) there is a likelihood of a permanent disability; (3) the member dies; or (4) the Reserve member, regardless of the ability to perform military duties, obtains medical treatment. AFI 36-2910, part 1.3; Def.'s Mots. at App. 11.

The Air Force issues a DD-214 in certain cases of separation from active service. The DD-214 informs military personnel and government agencies about the circumstances of a servicemember's separation in order to properly process their discharge. AFI 36-3202, 2.2 (May 20, 1994); AR 164. The Air Force relies on AFI 36-3202, Table 2, to determine whether to issue a DD-214 and what narrative reason for the member's separation to list on the form. AFI 36-3202, Table 2; AR 163.

### B. Facts

#### 1. Plaintiff's Medical History

Mr. Pohl joined the Army in 1982, serving three years on active duty before joining the Air Force Reserve as a flight engineer in 1985. Compl. ¶ 8. In April 1991, Plaintiff allegedly fell 100 feet into a ravine and sustained a back injury during an Air Force training program; course leaders and on-site medical technicians treated him at the time. *Id.* ¶ 10. He did not receive or request further treatment, and he continued and completed the 17-day training course. *Id.*

After returning home from the course, Plaintiff's wife noted that he had significant bruising. *Id.* ¶ 11. The next day, he visited the on-base hospital where the flight surgeon on duty examined him and allegedly stated that "he [the surgeon] was sure that he would find something wrong if Mr. Pohl was examined further," and that such further examination "would put Mr. Pohl on Duties Not Including Flying ("DNIF") status and possibly end Mr. Pohl's military career." *Id.* ¶ 12. Fearing the loss of his career, Mr. Pohl opted to leave the hospital without further testing. *Id.* He treated his injuries on his own with pain medication and heat therapy per his doctor's suggestion. *Id.*

No diagnosis was made regarding a back or other injury attributed to the April 1991 training incident. *Id.* ¶ 13. Indeed, the record is completely devoid of any contemporaneous medical documentation of the April 1991 incident beyond Plaintiff's representation that he

visited the on-base hospital but left without a diagnosis or treatment. Plaintiff's counsel explained at oral argument that Mr. Pohl's decision not to seek treatment was influenced by a severe stigma against reporting injuries that was pervasive in the military in the 1990s, and which remains today. Hr'g Tr. at 28:4–14. Counsel also noted that servicemembers in the 1990s were "actively encouraged not to report deficiencies in their medical condition because that was the philosophy of the military at the time." *Id.* at 28:10–12.

In 2016, well over two decades later, Mr. Pohl self-reported to the Department of Veterans Affairs (VA) that he was disabled as a result of the April 1991 incident. Compl. ¶¶ 17, 19. He did so to obtain documentation connecting that incident to his disability. *See id.* ¶¶ 18–20; Pl.'s Mot. at 3; Hr'g Tr. at 12:2–25; 43:4–12. There is no evidence that independently verifies this claim. Mr. Pohl's self-report that the April 1991 injury caused his back condition was the sole basis upon which the VA made its determination in his case. *See* AR 8–14; Hr'g Tr. at 43:4–12. As counsel conceded at oral argument, "the VA considered the 1991 injury alone for the assessment of the 100 percent disability rating that formed the basis" for his application to the AFBCMR and did not consider other relevant injuries that appear in the record. Hr'g Tr. at 43:4–12.

On October 25, 2018, based on Plaintiff's own representations, the VA found that Mr. Pohl's lower back condition was "service-connected" as a result of the April 1991 incident and assigned him a disability rating of 40%. AR 8–14. Plaintiff alleges, without providing any supporting documentation, that the VA performed a medical examination in March 2017, and the doctor noted in the medical history that Mr. Pohl's lower back condition began during training in 1991 when he fell into a ravine. Pl.'s Mot. at 3–4. Additionally, Plaintiff points to a separate October 25, 2018 Deferred Rating Decision from the VA—also not contained in the administrative record before the AFBCMR—which states that "[t]he preponderance of the evidence supports an injury during/on [the April 1991] active duty for training period." Pl.'s Reply and Resp. at Ex. A. Plaintiff further alleges, again failing to identify any documentation in the record, that "Mr. Pohl's rating was re-examined and increased to 70% with 100% un-employability effective December 2018." Compl. ¶ 19.

After the April 1991 incident, Plaintiff continued as a reservist with the Air Force while working at a civilian job with a commercial airline. *Id.* ¶ 13. Nearly six years later, in December 1996, Plaintiff claims he "aggravated the injury" he allegedly sustained in April 1991 by lifting a heavy object at his civilian job and became "incapacitated." *Id.* Mr. Pohl's Standard Form 502—an Air Force medical record completed by Plaintiff's medical provider, Dr. Michael F. Coscia, M.D.—states that he "apparently sustained an on-the-job-injury while working for his civilian employer on 4 Dec 96," and "[a]fter apparent reinjury while lifting his son at home on 5 May 97, he was placed in DNIF on 17 May 97 for lower back sprain." AR 105. Medical records also reflect that Plaintiff was injured in a motor vehicle accident in 1995. *E.g.*, AR 113. Despite these other injuries in his medical record, Mr. Pohl only reported the April 1991 incident for the VA's consideration. *See* Hr'g Tr. at 43:4–12.

On December 3, 1997, Plaintiff's civilian medical provider, Dr. Coscia, identified a number of issues with his L5 vertebrae. *See* AR 113–121. Plaintiff also alleges, though the documentation does not appear to support, that Dr. Coscia determined that his x-rays "revealed

the extent of the 1991 injury," Compl. ¶ 17, because they showed a "copious amount of fragmented bony overgrowth," AR 120.  Plaintiff contends this indicates an earlier injury.  Hr'g Tr. at 11:16–25, 12:1.[1]  Mr. Pohl subsequently had surgery in 1997 for a 360-degree fusion of his L5-S1 vertebrae and was diagnosed with additional spinal injuries.  Compl. ¶ 13.  He underwent additional back surgeries in 2001 and 2003.  *Id.*

### 2. Plaintiff's Retirement

On November 6, 1997, Plaintiff was placed on a profile that rendered him "not qualified for deployment" and "not qualified for reassignment."  AR 146.  On June 27, 1998, Captain Peter K. Tiernan, a U.S. Air Force doctor, reviewed Mr. Pohl's medical file and noted that in order to begin the process to return to duty, Mr. Pohl needed to provide documentation from his primary care provider.  Compl. ¶ 14; *see* AR 106.  Dr. Tiernan noted that "[i]n the probable event that the patient's provider recommends long-term disability, the patient will need to return for reevaluation" by a medical evaluation board ("MEB").  Compl. ¶ 14; *see* AR 106.  Mr. Pohl never obtained documentation from his primary care provider or a reevaluation from a MEB.  Compl. ¶ 14.  He claims that he was never offered such an opportunity.  Pl.'s Reply and Resp. at 5.

The profile that established Mr. Pohl as "not qualified for deployment" expired one year later, on November 6, 1998.  *See* AR 102, 144–46.  On December 8, 1998, the Air Force sent Plaintiff via certified mail "all necessary paperwork for world wide duty determination."  AR 102.  On December 14, 1998, his wife signed a receipt for the certified mail.  AR 102–03.  The record also shows that later that week, his wife called the Air Force to discuss the paperwork.  AR 102.  On December 21, 1998, the Air Force mailed Mr. Pohl two memoranda: a "Required Medical Documentation Update," and "Selection of Rights to Physical Evaluation Board (PEB)" (collectively, "the December 21 communications").  AR 136–37.  The "Required Medical Documentation Update" memorandum requested additional medical documentation regarding Mr. Pohl's prognosis, limitations, complications, treatments, and medications.  AR 136.

The Government claims that despite multiple communications with Mr. Pohl and extensions of time, he failed to produce the documentation.  Def.'s Mots. at 3; *see* AR 102.  Plaintiff claims that "he did not receive any additional communications from the Air Force for his medical documentation" and instead "was jettisoned out of the Air Force with no line of duty determination and no opportunity to go before a medical evaluation board."  Pl.'s Reply and Resp. at 5.  The record shows that the Air Force sent the December 21 communications via regular mail rather than certified mail, so there is nothing in the record to show whether Mr. Pohl actually received the December 21 communications.  *See* AR 102.

---

[1] Dr. Coscia's comment that Mr. Pohl's vertebrae showed a "copious amount of fragmented bony overgrowth" was made in response to observing the vertebrae during surgery, and not in connection with his review of Plaintiff's x-rays, as Plaintiff states in his Complaint.  AR 120; *see also* AR 114–15; Compl. ¶ 17.

5

The December 21 communications contained information about the right to a PEB and attached the forms necessary to request one. AR 102, 136–37. In particular, the "Selection of Rights to a PEB" memorandum stated that failing to return the "Selection of Rights to PEB" form constitutes a waiver of that right and triggers discharge proceedings. AR 137. Another Air Force memorandum (with an unclear date) stated that Mr. Pohl "did not make an election to have the case reviewed by the [informal PEB]," and therefore recommended "non-retention." AR 97.

On June 22, 1999, the Air Force declared Plaintiff medically disqualified for service due to his inability to be deployed or perform his duties as a flight engineer. AR 213. On September 9, 1999, Plaintiff received notification of his pending administrative discharge under AFI 36-3209, paragraph 3.14, *Physical Disqualification*. AR 89. The record reflects that Plaintiff returned a signed acknowledgement of having received the discharge notification, AR 94, and submitted Air Force Form 131, *Application for Transfer to the Retired Reserve*, on September 24, 1999, AR 91. A separate memorandum from Air Force Reserve Command, dated September 3, 1999, states that Mr. Pohl was eligible for retirement with benefits upon being separated due to his physical disqualification. AR 93. An October 27, 1999 Reserve Order EK-0612 made Mr. Pohl's "Reserve Retired List" status effective October 1, 1999. AR 15.[2]

Plaintiff alleges that his DD-214 did not reflect a medical disability rating, and that he did not go through any disability processing prior to retirement or turn in his military flight gear.[3] Compl. ¶ 15. Further, medical personnel never physically evaluated him or placed him on the Temporary Disability Retired List ("TDRL"). *Id.* He states that his out-processing was done entirely remotely and did not allow for the PEB to review his condition. *Id.*

### C.     AFBCMR Decision

On November 16, 2018, after being advised by fellow veterans that his DD-214 "did not reflect the true reason the military released [him] from service obligation as reflected in the 'Reason' section of the driving authority of Reserve Order EK-0612 [sic]," AR 17, Plaintiff applied for correction of his military record with the AFBCMR, AR 2, 7. He requested a DD-214 to indicate that he was "medically discharged" for a service-connected injury that rendered him permanently disabled. AR 2, 7. The issue, according to Plaintiff, was that his DD-214 did not reflect the actual reason for his discharge as shown on the October 27, 1999 Reserve Order EK-0612. AR 2, 15. Instead, his DD-214 listed the narrative reason for his separation as "Completion of Required Active Duty Training." AR 3. Plaintiff claims that he waited until 2018 to apply for disability retirement with the AFBCMR because he did not know he was eligible to do so until he received the VA's determination that he was disabled through a service-

---

[2] Plaintiff claims, inconsistent with the record, that Reserve Order EK-0612 "involuntarily" retired him and transferred him to the Retired Reserve. Compl. ¶ 15; Pl.'s Mot. at 3; AR 15.

[3] It is not clear when Plaintiff was issued a DD-214. The pleadings and the record seem to focus on the issue that Plaintiff was not issued a DD-214 "at the time of retirement." *E.g.*, Compl. ¶ 22. Plaintiff seems to have been issued the form at some point after his retirement, but the exact date cannot be determined because relevant pages in the record are largely illegible photocopies. AR 76–77.

6

connected injury, namely, the April 1991 incident. *See, e.g.*, Hr'g Tr. at 12:2–25. This despite the fact that it was Plaintiff who self-reported to the VA that his back injury was the sole result of the 1991 incident.

Plaintiff made three main arguments before the AFBCMR. First, Mr. Pohl claimed that "[t]he Air Force failed to follow proper IDES processing procedures" at discharge because he "was forced into a medical retirement with no medical examination, no chance to request a waiver [via AFI 48-123, *Medical Examinations and Standards*], and no opportunity to review his DD Form 214 to ensure it was accurate prior to being generated" and that the Air Force failed to comply with AFI 48-123 by ignoring the "Presumption of Fitness," "Disability Information," and "Mandatory Examinations." AR 2, 5. Second, Plaintiff alleged that he "did not receive his mandatory medical examination; thus, he was never properly evaluated for the injury he suffered in 1991." AR 5. Finally, he contended that the AFBCMR Medical Advisor erred by failing to consider the proper rule in Table 2 of AFI 36-3202, which mandates the issuance of a DD-214, and applying the wrong rule (Rule 3), which Plaintiff alleged did not apply to his case. AR 5.

In July 2020, the AFBCMR determined that Plaintiff did not establish by a preponderance of the evidence his claim that he discovered the "alleged error or injustice" within the three-year filing requirement under 10 U.S.C. § 1552 and AFI 36-260. AR 4–5. Therefore, his filing with the AFBCMR was untimely. *Id.* The AFBCMR further found that Plaintiff was "not the victim of an error or injustice" because "a preponderance of the evidence [did] not substantiate [Plaintiff's] contentions," and it disagreed with his argument that the Medical Advisor applied the wrong rule of AFI 36-3202. AR 2–7. The AFBCMR concurred with and relied upon an advisory opinion submitted by the AFBCMR Medical Advisor, who found that Plaintiff "chose to apply for early retirement in lieu of discharge for physical disability," which was the reason his case was "never processed through the disability evaluation system to determine his physical disability." AR 166.

In her January 13, 2020 advisory opinion for the AFBCMR, the Medical Advisor determined that there was (1) "no error or evidence to warrant a change to the narrative reason of the DD 214"; (2) "insufficient evidence to support a medical retirement"; and (3) "insufficient evidence to find the service member's back issue was a result of a service connected injury." AR 165. The Medical Advisor found "no medical documentation of any injury that occurred in April 1991." AR 166–67. She noted that Plaintiff's medical records showed he injured his back in a motor vehicle accident in the mid-1990s and when he lifted a seventy-pound aircraft battery during his civilian job, both of which occurred while he was not on active-duty military orders, and that he "denied any military accidents or injury." *Id.* Therefore, the Medical Advisor "found no evidence to support a medical retirement or a change in [Plaintiff's] narrative reasoning [on his DD-214] to reflect a physical disability." AR 167.

The Medical Advisor attached a December 26, 2019 letter from the Air Force Reserve Personnel Center, to which the AFBCMR also referred in making its decision. AR 4, 161. The letter explained that Plaintiff was ineligible for a DD-214 at the time of his retirement because he was not on active-duty orders for ninety continuous calendar days leading up to his retirement, and it recommended that the AFBCMR deny Plaintiff's request for a DD-214. AR 161. The letter cites AFI 36-3202, *Certificate of Release or Discharge from Active Duty*, Table 2. *Id.*

7

      **D.**    **The Present Complaint**

On June 16, 2021, Mr. Pohl filed a Complaint in this Court. Compl. He alleges that he met the elements of 10 U.S.C. § 1204 for disability retirement pay, and therefore the AFBCMR's decision that he was not entitled to a medical retirement was arbitrary and capricious. Compl. ¶ 30–32; Pl.'s Mot. at 7, 8–17. He further alleges that the AFBCMR acted arbitrarily and capriciously in determining that the Air Force did not err when issuing his DD-214 because the AFBCMR cited the wrong rules of the applicable Air Force regulation in its decision. Compl. ¶ 39; Pl.'s Mot. at 16–17. Finally, Mr. Pohl asserts that he had liberty and property rights in his disability retirement, rendering the denial of his retirement and medical benefits a violation of his constitutional substantive and procedural due process rights. Compl. ¶ 33–35, 38, 40.

**II.**    **Discussion**

      **A.**    **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

The Government moves to dismiss the Complaint pursuant to RCFC 12(b)(1), arguing that the Court lacks jurisdiction to hear any of Plaintiff's claims because they are untimely and because the Court generally does not have jurisdiction to hear Plaintiff's due process claims. Def.'s Mots. at 7–12.

"Jurisdiction is a threshold matter and a case can proceed no further if the court lacks jurisdiction to hear it." *Schmidt v. United States*, 89 Fed. Cl. 111, 118 (2009) (*citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). Therefore, the Court has the duty "to examine its jurisdiction over every claim before it assumes jurisdiction over the claim." *RHI Hldgs., Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998). The Tucker Act, 28 U.S.C. § 1491, is the primary source of this Court's jurisdiction. It waives the United States' sovereign immunity for claims against the United States that are founded upon the Constitution, an Act of Congress, an executive department regulation, or an express or implied contract with the United States. *See* 28 U.S.C. § 1491(a)(1) (2018). The Tucker Act is a purely jurisdictional statute that does not itself provide a cause of action. *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). Accordingly, for a claim to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (first citing *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983); and then citing *United States v. Testan*, 424 U.S. 394, 398 (1976)). In other words, the plaintiff must identify a "money mandating" source of law. *Id.*

When considering a motion to dismiss for lack of subject matter jurisdiction, the Court treats all factual allegations in the complaint as true and construes those allegations in the light most favorable to the plaintiff. *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)); *see Schmidt*, 89 Fed. Cl. at 119. However, the plaintiff still bears the burden to prove by a preponderance of the evidence that the Court has jurisdiction over his claims. *Schmidt*, 89 Fed. Cl. at 118 (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)); *see also Montiel v. United States*, 118 Fed. Cl. 283, 287 (2014) ("The plaintiff . . . must

prove any disputed jurisdictional facts by a preponderance of the evidence."). When a party challenges the jurisdictional facts alleged in the complaint, as is the case here, the Court may engage in fact finding to resolve factual disputes and determine whether the plaintiff has established jurisdictional facts by a preponderance of the evidence. *Reynolds*, 846 F.2d at 747; *see Carter v. United States*, 62 Fed. Cl. 66, 69 (2004) (citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002)). When this occurs, the Court may consider other relevant evidence to resolve factual disputes. *Reynolds*, 846 F.2d at 747; *see also The George Fam. Tr. ex rel. George v. United States*, 91 Fed. Cl. 177, 190 (2009).

1. **Statute of Limitations**

   a. **When the statute of limitations began to run**

The Court lacks subject matter jurisdiction in this case because the statute of limitations has expired. Under 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." A claim under the Tucker Act accrues when "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue [in this Court] for his money." *Chambers*, 417 F.3d at 1223 (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc)). In general, military disability retirement pay claims "do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Id*. at 1224 (citing *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990)).

However, the Federal Circuit in *Real* held:

> If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon discharge. A subsequent petition to the corrections board does not toll the running of the limitations period, nor does a new claim accrue upon denial of the petition by the Corrections Board. However, "where the Correction Board is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the Correction Board's final decision." Thus, under *Friedman* if the service member had neither requested nor been offered consideration by a retiring board prior to discharge, the later denial of his petition by the Corrections Board was the triggering event, not his discharge. However, there are circumstances under which the service member's failure to request a hearing board prior to discharge has been held to have the same effect as a refusal by the service to provide board review.

906 F.2d at 1560 (cleaned up) (first citing *Friedman v. United States*, 310 F.2d 381, 390, 396–98 (Ct. Cl. 1962), *cert. denied*, 373 U.S. 932 (1963); then citing *Miller v. United States*, 361 F.2d 245 (Ct. Cl. 1966); and then citing *Huffaker v. United States*, 2 Cl. Ct. 662 (1983)).

9

Under *Chambers*, "such failure can invoke the statute of limitations when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge." 417 F.3d at 1226. Specifically, the question is whether Plaintiff's knowledge at the time of discharge "was sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge." *Real*, 906 F.2d at 1562. Moreover, that knowledge must be determined by reference to the statutory requirements for disability retirement, which are the four elements of 10 U.S.C. § 1204 in this case. *See Chambers*, 417 F.3d at 1226. The question under *Real*, according to *Chambers*, focuses on "whether at the time of his separation . . . [the servicemember] knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected." *Chambers*, 417 F.3d at 1226.

After reviewing all facts in the Complaint and consulting the administrative record to assess relevant jurisdictional facts, the Court finds that Plaintiff has not proven subject matter jurisdiction by a preponderance of the evidence. Specifically, the Court holds that the statute of limitations began to run at the time of Mr. Pohl's discharge in 1999 and has long since expired. Plaintiff's counsel admitted at oral argument, and the Complaint makes clear, that Mr. Pohl knew he was permanently disabled at the time of discharge and that the incident in 1996 at his civilian job aggravated the alleged service-connected back injury from April 1991. *See, e.g.*, Hr'g Tr. at 12:14–16, 19:1–6; Compl. ¶ 13. Plaintiff even emphasizes in his Complaint and briefings, and his counsel reiterated at oral argument, that he understood Dr. Coscia's 1997 finding of a "copious amount of fragmented bony overgrowth" on his vertebrae, AR 120, to be evidence of "the extent of the 1991 injury," Compl. ¶ 17; *see also* Pl.'s Mot. at 3, 8; Hr'g Tr. at 11:16–12:1. This indicates that Mr. Pohl knew since at least 1997 of the possibility that he had a permanent, service-connected disability.

Furthermore, it was Plaintiff himself who provided information to the VA about the April 1991 incident, and this self-report formed the basis for the VA's finding that he had a service-connected disability. Hr'g Tr. at 43:4–12. The fact that Mr. Pohl went to the VA specifically to obtain a determination that his disability was connected to the April 1991 incident indicates that Mr. Pohl believed that he had a qualifying disability. Thus, Plaintiff's argument that he was unaware of a service-connected disability until the VA's 2018 finding—because he was not given a line of duty determination after the April 1991 incident—is incredulous. *See* Pl.'s Mot. at 4; Hr'g Tr. at 12:2–25.

Under *Friedman*, if the servicemember neither requested nor was offered consideration by a disability board prior to discharge, the later denial of his petition by a corrections board, not his discharge, triggers the statute of limitations. 310 F.2d 390, 395–98. However, because Plaintiff knew about his service-connected disability when he was discharged, the statute of limitations began to run at that time. *See Real*, 906 F.2d at 1561–63 (describing the relevant inquiry as "[w]hether the veteran's knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to discharge."); *Chambers*, 417 F.3d at 1226; *see also Miller*, 361 F.2d at 249–50; *Huffaker*, 2 Cl. Ct. 662.

Plaintiff also claims, based on the apparently incomplete and remote manner of his discharge processing, that the Air Force never offered him the opportunity for a MEB.[4] *See* Compl. ¶¶ 14–15. Plaintiff's position is that Dr. Tiernan's note in his medical file put the Air Force on notice that Mr. Pohl needed a MEB, but the Air Force failed to follow through. *See id.* However, because Plaintiff had knowledge of his entitlement to disability benefits per the elements of 10 U.S.C. § 1204 when discharge proceedings began, his failure to request a board prior to discharge has the same effect as a refusal by the service to provide board review. *See Real*, 906 F.2d at 1560; Hr'g Tr. at 12:14–16, 19:1–6; Compl. ¶ 13. In other words, Mr. Pohl's failure to demand a hearing board when he knew he required one constituted a waiver of that right and triggered the statute of limitations at the time of discharge. *See id.* Moreover, the December 1998 communications show both that it is the servicemember's burden to affirmatively request a PEB, and that "[f]ailure to [timely submit the paperwork requesting a PEB] will constitute a waiver of this right and discharge proceedings will continue." AR 137.[5]

Finally, the fact that Mr. Pohl opted to voluntarily transfer to the Retired Reserve negates his statute of limitations argument. As the *Real* decision holds, a servicemember's waiver of an evaluation board triggers the statute of limitations at the time of discharge. 906 F.2d at 1560–62. Even if Plaintiff did not have the requisite knowledge to conclude that he waived his right to a PEB under a "failure to request" analysis per *Real* and *Chambers*, his claims still fail. Applying to transfer to the Retired Reserve in lieu of separation due to a physical disqualification undoubtedly constitutes a waiver of his right to a PEB and any processing under the IDES. *See Moyer v. United States*, 190 F.3d 1314, 1319 (Fed. Cir. 1999) (stating the "common sense notion that one who voluntarily gives up any right to compensation and benefits cannot later claim entitlement to such"). Thus, Mr. Pohl waived his right to an evaluation board on two grounds: first, because he had the requisite knowledge to request one, and second, because he applied to voluntarily transfer to the Retired Reserve instead of going through the IDES. Accordingly, the statute of limitations on any potential claim Mr. Pohl could have under 10 U.S.C. § 1204 began at the time of discharge in 1999. And, as explained below, his voluntary transfer to the Retired Reserve also defeats the merits of such a claim.

---

[4] It is irrelevant to a statute of limitations analysis which specific medical boards, such as a MEB or formal or informal PEB, that Plaintiff obtained. The relevant inquiry for determining when the statute of limitations began to run in this case is whether and when Plaintiff requested, obtained, or was denied review of his case by *any* statutorily authorized board prior to obtaining a decision from the AFBCMR. *See Chambers*, 417 F.3d at 1223; *Real*, 906 F.2d at 1560.

[5] Plaintiff alleges that he did not receive these communications. Even if true, that fact would be irrelevant to the Court's analysis because he still had the requisite knowledge under *Real* and *Chambers* that he was entitled to disability benefits, at which point the law makes it the servicemember's responsibility to affirmatively request an evaluation board. *See Real*, 906 F.2d at 1561–63; *Chambers*, 417 F.3d at 1226. Additionally, the December 1998 communications only refer to a PEB; Mr. Pohl still could have requested a MEB or other type of evaluation board available to him under the IDES. *See* AR 136–39.

### b. Plaintiff's request to toll or waive the statute of limitations

Plaintiff argues in the alternative that the Court should waive the statute of limitations based on the doctrine of equitable tolling because he "was on heavy narcotics from his post-operation recovery following his medical retirement." Pl.'s Reply and Resp. at 6. It is well established that the statute of limitations under the Tucker Act "cannot be waived or extended by equitable considerations," and therefore, the Court cannot toll the statute of limitations on these grounds. *Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008).

To the extent that Plaintiff is actually requesting a waiver of the statute of limitations based on the doctrine of legal disability—versus the doctrine of equitable tolling—the Court cannot grant a waiver on these grounds either. Plaintiff does not meet the "heavy burden" to establish legal disability, which requires that a "plaintiff's mental illness . . . be acute and extreme" such that it renders him "incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities." *Schmidt*, 89 Fed. Cl. at 123 (quoting *Ware v. United States*, 57 Fed. Cl. 782, 788 (2003)). Plaintiff must also show that the "failure to file was the direct result of a mental illness that rendered him incapable of rational thought or deliberate decision making, or incapable of handling his own affairs or unable to function in society." *Id.* (quoting *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004)). Moreover, a "narcotic addiction does not in itself constitute a statute-tolling legal disability unless the claimant alleges and shows that he was 'incapable of understanding the nature of his discharge,' which he sought unsuccessfully to change." *Goewey v. United States*, 612 F.2d 539, 544 (Ct. Cl. 1979) (quoting *Cochran v. United States*, 506 F.2d 1406 (Ct. Cl. 1974) (table)). Plaintiff has not made that showing.

### 2. Due Process Claims

The Government argues that this Court does not have jurisdiction over Plaintiff's Fifth Amendment due process claims because such claims are not money mandating. Def.'s Mots. at 12; *see, e.g.*, *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed. Cir. 1988) (stating "it is firmly settled that [the Due Process Clause] do[es] not obligate the United States to pay money damages" and therefore, cannot trigger jurisdiction under the Tucker Act) (first citing *United States v. Testan*, 424 U.S. 392, 401–02 (1976)); then citing *Inupiat Cmty. v. United States*, 680 F.2d 122, 132 (Fed. Cl. 1982); and then citing *Carruth v. United States*, 627 F.2d 1068, 1081 (Fed. Cl. 1980)).

While the Government is correct that this is the general rule, the Court may consider the due process violations implicated by procedural deficiencies in military separation procedures because they are connected to money-mandating claims. *Cf. Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) ("The determination of [a plaintiff's] entitlement to remedy under [the Military Pay Act] may include consideration of whether his removal violated constitutional rights."). However, while the Court may have subject matter jurisdiction over Plaintiff's due process claims on these grounds, it is nonetheless divested of jurisdiction by the untimeliness of Plaintiff's Complaint. Accordingly, the Government's Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction is **GRANTED**.

### B. Cross-Motions for Judgment on the Administrative Record

Given this Court's lack of subject matter jurisdiction, it need not address the parties' Cross-Motions for Judgment on the Administrative Record. However, it offers the following explanation as to why Plaintiff's claims would nevertheless not succeed on the merits.

#### 1. Standard of Review

##### a. RCFC 52.1

The standard of review governing a decision to render judgment on the administrative record pursuant to RCFC 52.1 is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *Peterson v. United States*, 104 Fed. Cl. 196, 204 (2012) (quoting *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006)); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment, when ruling on a motion for judgment on the administrative record, courts can make "factual findings . . . from the record evidence as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1357. "The existence of a question of fact thus neither precludes the granting of a motion for judgment on the administrative record nor requires this court to conduct a full blown evidentiary proceeding." *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 710 (2011) (first citing *Bannum, Inc.*, 404 F.3d at 1356; and then citing *Int'l Outsourcing Servs., LLC v. United States*, 69 Fed. Cl. 40, 45–46 (2005)).

##### b. Scope of review and justiciability of AFBCMR decisions

Courts have historically extended significant deference to the military's routine personnel decisions. *See Bond v. United States*, 47 Fed. Cl. 641, 647 (2000); *Sanders v. United States*, 594 F.2d 804, 813 (Ct. Cl. 1979) ("Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters."). Thus, courts review military correction board decisions only "for failure to correct plain legal error committed by the military." *Dodson v. Dep't of the Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (first citing *Arens v. United States*, 969 F.2d 1034, 1037 (Fed. Cir. 1992); then citing *Grieg v. United States*, 640 F.2d 1261, 1266 (Ct. Cl. 1981); and then citing *Sanders*, 594 F.2d at 813). "Such legal error includes the military's 'violation of statute, or regulation, or published mandatory procedure, or unauthorized act.'" *Id.* (quoting *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979)).

The standard of review is whether a military correction board's final agency action was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." *Fisher*, 402 F.3d at 1180. That review is particularly narrow and may only include consideration of "the administrative record before the deciding official or officials." *Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Importantly, courts may not "substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 2010). The agency's decision must only

reflect a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

### 2. The AFBCMR's Ruling that Plaintiff's Application was Untimely

Were this Court to rule on the merits of the Cross-Motions for Judgment on the Administrative Record, its analysis could end here. The AFBCMR clearly articulated the primary reason for denying Mr. Pohl's application:

> [T]he applicant did not file the application within three years of discovering the alleged error or injustice, as required by Section 1552 of Title 10, United States Code, and Air Force Instruction 36-2603, *Air Force Board for Correction of Military Records (AFBCMR)*. While the applicant asserts a date of discovery within the three-year limit, the Board does not find the assertion supported by a preponderance of the evidence. The Board does not find it in the interest of justice to waive the three-year filing requirement. Therefore, the Board finds the application untimely and recommends against correcting the applicant's records.

AR 5–6. As the Government noted at oral argument, Plaintiff waived this issue. *See* Hr'g Tr. at 45:13–24. In his Motion for Judgment on the Administrative Record, Plaintiff did not dispute the AFBCMR's finding that his application was untimely. Nor did Mr. Pohl provide evidence that he filed his application within three years of discovering the alleged error or injustice. *See* Pl.'s Mot.; Pl.'s Reply and Resp. Therefore, the Court could uphold the AFBCMR's decision and deny Plaintiff's Motion for Judgment on the Administrative record on these grounds alone.

### 3. The AFBCMR's Decision that Plaintiff Failed to Demonstrate Error Requiring a Medical Retirement or a Correction to His Narrative Reason for Separation

The AFBCMR found that Plaintiff failed to prove, by a preponderance of the evidence, that the Air Force erred by denying him disability retirement under 10 U.S.C. § 1204. AR 5. This finding was based on the lack of evidence that he was rendered disabled through an injury incurred or aggravated in the line of duty and his transfer to the Retired Reserve in lieu of discharge due to a physical disability. AR 5–6, 166. For the same reasons, the AFBCMR found no support for correcting the narrative reason for separation on Plaintiff's DD-214. AR 5–6. Plaintiff alleges that this decision was arbitrary and capricious because the AFBCMR failed to recognize that he met the requirements of 10 U.S.C. § 1204. Pl.'s Mot. at 8. Specifically, Mr. Pohl contends that (1) he "suffered a permanent disabling condition not the result of intentional misconduct or willful neglect"; (2) his condition was the result of an injury that "occurred during inactive duty training"; (3) "he was entitled to but denied a Line of Duty determination"; and (4) "his VA disability rating meets the . . . threshold requirement of 30%." *Id.*

The record provides substantial evidence to support the AFBCMR's decision, particularly in light of the lenience and deference courts extend to military personnel decisions. Due to the complete absence of contemporaneous medical documentation of the April 1991 incident in the

record before the AFBCMR—which is the only alleged injury in Mr. Pohl's medical history that could be service-connected—the Board's finding that Plaintiff was not entitled to disability retirement pay was well-founded. AR 5–6. Indeed, the only medical documentation of Plaintiff's disability before the AFBCMR related to incidents where Plaintiff injured or aggravated his back condition while he was not on active-duty orders. This included evidence of a 1995 motor vehicle accident, a 1996 injury from lifting a heavy object at his civilian job, and a 1997 injury from lifting his son in his home. AR 105, 113. Most notably, Plaintiff's civilian medical records reflect that he reported "*no previous accidents in the military*." AR 113, 166–67 (emphasis added).

The record also shows that Plaintiff signed and submitted an application for transfer to the Retired Reserve after receiving notice of his pending discharge due to physical disqualification and multiple requests to provide the Air Force additional documentation. AR 94. In this application, he specifically opted out of disability retirement. *See id.*; 10 U.S.C. § 12731a(a). Therefore, the AFBCMR relied on substantial evidence when it determined that Mr. Pohl did not qualify for medical retirement or a correction to the narrative reason for separation, which was "Completion of Required Active Duty Training." AR 76.

Plaintiff claims that he would have established his entitlement to disability retirement had he not been improperly denied a line of duty determination after the 1991 incident. Pl.'s Mot. at 12. However, the AFBCMR's decision was not in error because the record before it was completely devoid of any contemporaneous medical documentation suggesting that Mr. Pohl sustained an injury requiring a line of duty determination. The alleged 1991 incident did not impact his ability to perform military duties within twenty-four hours of his injury. *See* Compl. ¶ 10; AFI 36-2910, part 1.3; Def.'s Mots. at App. 11. In fact, he continued participating in and completed the 17-day training course after his fall. Compl. ¶ 10. There is no medical documentation indicating a likelihood of permanent disability because no injury from the fall was ever formally diagnosed. *Id.* ¶ 13; AFI 36-2910, part 1.3; Def.'s Mots. at App. 11. The record similarly does not reflect that Plaintiff received medical treatment for the 1991 injury because he declined any additional testing or treatment beyond at-home pain medication and heat therapy. Compl. ¶ 12.

Finally, the VA's finding that Mr. Pohl's disability was service-connected would not have been a reliable basis for the AFBCMR to grant him relief. *See* AR 8–14, 181; Hr'g Tr. at 43:4–12. The VA's determination was based entirely on Mr. Pohl's self-representation that his back injury resulted from the 1991 incident. AR 8–14; Hr'g Tr. at 43:4–12.

### 4.  **The AFBCMR's Decision that Plaintiff was not Eligible for a DD-214**

Plaintiff claims that the AFBCMR acted arbitrarily and capriciously by concluding that he was not entitled to a DD-214 because he (1) was not on continuous active duty for ninety days leading up to his retirement and (2) was removed from the Temporary Disability Retired List ("TDRL"). Compl. ¶ 39; Pl.'s Mot. at 16–17. Mr. Pohl argues that the AFBCMR improperly relied on AFI 36-3202, Table 2, Rules 3 and 18, in reaching these respective decisions. Pl.'s

Mot. at 14–17. However, the AFBCMR's decision to apply Rule 3 was supported by substantial evidence, and the Board did not base its decision on Rule 18 as Plaintiff contends. *See* AR 3–5.

Plaintiff asserts that the AFBCMR should not have relied on Rule 3 when it determined that he would not have been eligible for medical retirement or a correction to the narrative on his DD-214. Pl.'s Mot. at 14–17. Rule 3 mandates issuing a DD-214 upon an Air Force Reserve member completing ninety continuous calendar days or more of active duty. AFI 36-3202, Table 2; AR 163. Mr. Pohl argues that Rule 3 did not apply to him and that the AFBCMR instead should have applied Rule 2, which provides for issuance of a DD-214 when a member is separated because of a disability. Pl.'s Mot. at 14–17. Mr. Pohl alleges he "was in fact separated due to his disability." *Id.* at 16. This argument is unpersuasive.

The record supports the AFBCMR's decision that Mr. Pohl was not separated "due to his disability" because there was no medical documentation of an injury sustained in the line of duty and he opted into the Retired Reserve. AR 5–6. Thus, Rule 2 would not have applied. Based on a common sense reading of Table 2, Rule 3 was the only other category for which Table 2 requires the issuance of a DD-214 that could have applied to Plaintiff's situation. *See* AFI 36-3202, Table 2; AR 163. Because Plaintiff did not meet the ninety-day requirement under Rule 3, the record supports the AFBCMR's decision to deny his claim for a DD-214 on those grounds.

Plaintiff's argument that the AFBCMR erred in applying Rule 18 is also unpersuasive. Rule 18 provides that the Air Force should not issue a DD-214 when a servicemember is removed from the TDRL. AFI 36-3202, Table 2; AR 163. Plaintiff asserts that he could not be TDRL-eligible because he never went through a PEB (the entity responsible for placing members on the TDRL). Plaintiff is correct that the record shows he was never placed on the TDRL and that Rule 18 does not apply. However, Plaintiff misinterprets the AFBCMR's reference to Rule 18, which appears only under the "Applicable Authority" section of the AFBCMR's decision, and not in any analysis. AR 3. Thus, the AFBCMR did not deny Plaintiff's request for a DD-214 based on his removal from the TDRL pursuant to Rule 18. It is not clear why the AFBCMR listed Rule 18 at all, but it does not amount to an arbitrary or capricious action. Even if the AFBCMR had also included an erroneous analysis and conclusion based on Rule 18, its decision with respect to Rule 3 would still stand, and therefore, so would its ultimate decision to deny the DD-214 and change of narrative description.

### C. Motion for Leave to File Supplemental Affidavit

Mr. Pohl's Motion to Supplement requests leave of the Court to file an affidavit "seek[ing] to address questions posed by the Court during oral arguments and to respond to positions espoused by Defendant." *See* Pl.'s Mot. to Suppl. at 1–2. It is unclear whether Plaintiff's Motion to Supplement should be treated as a motion to amend the Complaint pursuant to RCFC 15, or a motion to supplement the administrative record. However, under either interpretation, the Motion is denied because it would be unduly prejudicial to the Government, is futile, and is unnecessary to permit meaningful and effective judicial review.

It is within the Court's discretion to grant leave to amend a pleading. *See Tamerlane, Ltd. v. United States*, 550 F.3d 1135, 1147 (Fed. Cir. 2008); *Husband v. United States*, 90 Fed.

Cl. 29, 38 (2009). RCFC 15(a) instructs that courts "should freely give leave [to amend] when justice so requires," and the Supreme Court has held that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, futility of an amendment or undue prejudice to the nonmoving party justifies denying a motion to amend the complaint. *Spalding & Son, Inc. v. United States*, 22 Cl. Ct. 678, 680 (1991) ("The existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under such circumstances."); *see also A & D Auto Sales, Inc*, 748 F.3d at 1158; *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed. Cir. 1989).

In ruling on a motion for judgment on the administrative record, a court "may consider 'extra-record' evidence in limited circumstances," which requires "showing that the 'additional evidence is necessary'" to supplement the administrative record. *Hirsch v. United States*, 144 Fed. Cl. 55, 58 (2019) (first quoting *Metz v. United States*, 466 F. 3d 991, 998 (Fed. Cir. 2006); and then quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009)). "If the administrative record is sufficient to permit meaningful and effective judicial review, supplementation of that record is not appropriate." *Id.*

Permitting Mr. Pohl to amend his Complaint at this stage to add an affidavit addressing "what [he] knew and when [he] knew it" in response to the Government's Motion to Dismiss would be unduly prejudicial to the Government. Aff. of Michael Pohl 1, ECF No. 19-1; *Spalding & Son*, 22 Cl. Ct. at 680. The relevant inquiry for adjudicating the Government's Motion to Dismiss Plaintiff's claim as barred by the statute of limitations is "whether at the time of his separation . . . [the servicemember] knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected." *Chambers*, 417 F.3d at 1226. Mr. Pohl had ample opportunity to respond to the Government's Motion to Dismiss and was ably represented by counsel both in a Response to the Government's Motion and at oral argument. *See generally* Pl.'s Reply and Resp.; Hr'g Tr.

Furthermore, filing the affidavit would be futile here because the Court does not reach the merits in this case. *See Spalding & Son*, 22 Cl. Ct. at 680. Even if the Court were to rule on the merits, its review would be limited to the record before the AFBCMR. *See Wyatt*, 23 Cl. Ct. at 319. Moreover, the fact that Plaintiff "did not seek to offer the additional material he seeks now to include in the administrative record" before the AFBCMR is "highly probative" that the affidavit would not be necessary to permit meaningful and effective judicial review. *Hirsch*, 144 Fed. Cl. at 58.

### III. Conclusion

For the foregoing reasons, the Government's Motion to Dismiss is **GRANTED**, and the case is **DISMISSED** with prejudice. The parties' Cross-Motions for Judgment on the

17

Administrative Record are **DENIED** as moot.  Plaintiff's Motion for Leave to File Supplemental Affidavit is also **DENIED**.  The Clerk of the Court is directed to enter judgment accordingly.

    **IT IS SO ORDERED.**

                                          <u>s/ Carolyn N. Lerner</u>
                                          CAROLYN N. LERNER
                                          Judge